```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND
                                 :
SANDRA GARDNER
                                 :
     v.                          : Civil Action No. DKC 24-454
                                 :
INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS,:
et al.
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of fiduciary duty case is the verified application for leave to file a complaint pursuant to 29 U.S.C. § 501(b) filed by Sandra Gardner ("Plaintiff").  (ECF No. 1).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Plaintiff's application for leave will be denied.

I.   Background

   A. Factual Background[1]

The International Association of Machinists and Aerospace Workers ("IAM") is an international labor organization that represents employees working in several industries including the aerospace, transportation, and automotive industries.  (ECF

---

[1] Unless otherwise noted, the following facts are undisputed.

No. 17, at 9).  Plaintiff has been a member of IAM since 1999. (ECF No. 24-2 ¶ 4).

In 2021, Plaintiff became concerned that then General Secretary-Treasurer Dora Cervantes ("Ms. Cervantes") was using union funds for personal travel in breach of her fiduciary duties. (ECF No. 1-1, ¶ 20).  Plaintiff alleges the information regarding Ms. Cervantes' misappropriation of funds came from the 2015-2019 Weekly Expense Reports of Ms. Cervantes.  (ECF No. 1 ¶ 19).

On May 5, 2022, Plaintiff and another IAM member wrote a letter to IAM President Robert Martinez ("President Martinez") and the IAM Executive Council detailing the alleged misappropriation of funds by Ms. Cervantes.  (ECF No. 1-2).  The letter demanded that President Martinez and the IAM Executive Council:

> [A]uthorize and take any and all necessary legal action against Dora Cervantes and Robert Martinez to obtain an accounting and restitution of lost funds to the IAM due to personal travel by such officers unrelated to legitimate union business, as well as the removal from office of Dora Cervantes and Robert Martinez for the loss of union funds described above[.]

(*Id.*).  On May 12, 2022, IAM responded to Plaintiff's demand letter, notifying her that IAM intended to "conduct an investigation and analysis of [Plaintiff's] claims."  (ECF No. 17-8, at 2).  Plaintiff and Mr. O'Neil responded in a letter dated May 20, 2022, informing IAM that they "expect more than a cursory audit or superficial investigation" of their claims.  (*Id.* at 4).

2

IAM responded on June 2, 2022, and explained that some of the allegations about Ms. Cervantes had been raised in 2021 by other IAM members and that those allegations had already been investigated by an independent auditing firm, Calibre CPA Group ("Calibre"). (*Id.* at 9). IAM stated that Calibre concluded "the per diem payments and transportation expenses for Ms. Cervantes relating to 2015-2019 are in compliance with the IAM's expense policies, Internal Revenue Service and Department of Labor Regulations, and are adequately documented." (*Id.*). IAM informed Plaintiff that IAM hired Withum, Smith, and Brown PC ("Withum") to investigate the additional concerns and claims raised by Plaintiff in her May 12, 2022, letter. (*Id.* at 9).

On July 28, 2022, Plaintiff sent another letter to IAM President Martinez and the IAM Executive Council expanding the demand to include an account of the travel and related expenses of General Vice President Mark Blondin ("Mr. Blondin") and seeking unredacted records related to Mr. Blondin's travel for the period he resided in the Upper Marlboro, MD and Dallas, TX areas (*Id.* at 16). IAM responded on August 9, 2022, declining to investigate the allegations against Mr. Blondin because Plaintiff did not explain why the requests related to Mr. Blondin were not included in the May 5, 2022, letter and because Mr. Blondin had not "worked in either location [Plaintiff] identified in many years." (*Id.* at 18). IAM informed Plaintiff that before they would determine if

3

further action regarding Mr. Blondin was appropriate, Plaintiff needed to provide "the specific expenditures on the specific [Labor Management] reports for which [Plaintiff claimed she needed] records to verify, and . . . objective facts setting forth a reasonable belief that it is necessary to verify those expenditures." (*Id.* at 19).

On July 28, 2022, Withum completed its investigation and sent its report to IAM's Executive Board. (ECF No. 17-11, at 2-7). On July 29, 2022, IAM sent a letter to Plaintiff summarizing Withum's investigation:

> [Withum] conducted an in-depth analysis of the expenses the International President incurred for his trips to or from Dallas, Texas and the surrounding areas whether on the Union's jet or by commercial air during 2015-2021.  They also conducted an in-depth analysis of the expenses the General Secretary Treasurer incurred for her trips to or from Houston, Texas during 2015-2021.  Their analysis included:
>
> - reviewing all expense statements for both officers for their trips identified above,
> - reviewing all receipts submitted for those trips,
> - interviewing both officers,
> - obtaining and reviewing additional documentation such as other individual's weekly expense statements, other individual's calendars, invitations to events, photographs, agendas of meetings attended, articles posted on the internet about the events and additional corroborating evidence.

4

(ECF Nos. 17-9, at 3; ECF 17-11). Withum concluded there was no "evidence of misappropriation of Union funds or abuse of Union resources by either officer" and that "the Union appears to maintain outstanding records of officer expenses to fulfill the recordkeeping requirements of Section 206 of the Labor Management Reporting and Disclosure Act." (ECF No. 17-11, at 7).

The IAM Executive Council reviewed the Withum report and determined there was no support for Plaintiff's allegations and that there was no basis for taking further action regarding Plaintiff's allegations. (ECF No. 17-9, at 3). Plaintiff now seeks leave of this court to file a complaint against Ms. Cervantes under 29 U.S.C. § 501 and against IAM under 29 U.S.C. § 431(c).[2]

### B. Procedural Background

On February 15, 2024, Plaintiff filed a verified application for leave under 29 U.S.C. § 501(b) requesting leave of the court to file her complaint. (ECF No. 1). On February 21, 2024, Defendants filed a response to Plaintiff's application, proposing a procedure for resolving the application. (ECF No. 4). Plaintiff filed a reply to Defendants' response on February 28, 2024. (ECF No. 13). On March 1, 2024, the court provided additional time for Defendants to file an opposition, and for Plaintiff to reply. (ECF No. 14). On April 22, 2024, Defendants filed their response to

---

[2] Count II of the proposed complaint under 29 U.S.C. § 431(c) does not require leave of the court to file.

5

Plaintiff's request (ECF No. 17), and on May 20, 2024, Plaintiff filed a reply memorandum in support of her application for leave. (ECF No. 22).

**II.  Standard of Review**

The Labor-Management Reporting and Disclosure Act ("LMRDA") creates a cause of action against union officials who violate their fiduciary duties.  29 U.S.C. § 501.  Section 501(a) of the LMRDA enumerates the fiduciary duties of a labor organization's officers, stating:

> The officers . . . of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is therefore, the duty of each such person . . . to hold [the organization's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with [the organization's] constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

29 U.S.C. § 501(a).  Section 501(b) of the LMRDA lists the perquisites to bringing a claim for a violation of section (a), providing in relevant part:

> When any officer . . . of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse[s] or fail[s] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer . . . in any district court of the United States . . . .  No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown[.]

29 U.S.C. § 501(b).

There are three prerequisites to filing a complaint: (1) there must be a failure or refusal of the governing board "to sue or recover damages or secure an accounting or other appropriate relief," (2) leave of court must be sought, and (3) good cause must be shown.  29 U.S.C. § 501(b).  There is some variation among the standards employed in the circuits to evaluate the good cause requirement of 501(b).[3]  It will not be necessary to choose among them because Plaintiff's application fails at the threshold.

**III. Analysis**

The fiduciary responsibilities created in section 501(a) are designed to protect union members.  *See Gould ex rel. St. Louis -*

---

[3] The United States Courts of Appeals for the Third, Ninth, Eleventh, and D.C. Circuits follow *Horner v. Ferron*, 362 F.2d 224 (9th Cir. 1966). The United States Courts of Appeals for the Second and Eighth Circuits have adopted the standard explained in *Dinko v. Wall*, 531 F.2d 68 (2d Cir. 1976).  Finally, the United States Court of Appeals for the Fifth Circuit follows *Hoffman v. Kramer*, 362 F.3d 308 (5th Cir. 2004).  The Fourth Circuit has not weighed in.

7

*Kan. City Carpenters Reg'l Council v. Bond*, 1 F.4th 583, 589 (8th Cir. 2021); *Dinko*, 531 F.2d at 73. The requirements of 501(b) are "designed to protect union officials from unjust harassment." *Gould*, 1 F.4th at 589 (quoting *Coleman v. Brotherhood of Ry. & S.S. Clerks*, 340 F.2d 206, 208 (2d Cir. 1965)); *see also Hoffman*, 362 F.3d at 314. These two important policies must be balanced in interpreting section 501(b). *Dinko*, 531 F.2d at 73.

"[T]he first step a court should undertake in reviewing a claim [under 29 U.S.C. § 501(b)] is to ascertain that the allegations meet the minimal requirements of the statute." *Gould*, 1 F.4th at 589 (quoting *Hoffman*, 362 F.3d at 316).

Defendants argue that Plaintiff has failed to meet the requirements of section 501(b) because (1) she failed to submit a required second demand letter following the Withum report findings and (2) her application is not supported by "good cause." (ECF No. 17, at 17-29). Plaintiff argues in response that she has met the requirements of section 501(b) because (1) section 501(b) does not require a second demand letter to be sent and (2) she has shown good cause exists for her claim. (ECF No. 24, at 15-20).

### A. Request Requirement

As a prerequisite to filing suit under 501(b), a plaintiff must first make a request that the union "sue or recover damages or secure an accounting or other appropriate relief," and the union or its governing officers must fail or refuse to act on the request

8

within a reasonable time.  29 U.S.C. § 501(b).  Put simply, 501(b) "addresses the situation where a union does not respond, leaving the complaining member 'no alternative but to invoke the power of the . . . the court[.]'" *Gould*, 1 F.4th at 590 (quoting *Filippini v. Austin*, 106 F.R.D. 425, 430 (C.D.Cal. 1985)).

In this case, Plaintiff's May 5, 2022[4] letter to President Martinez and the IAM Executive Council demanded an "accounting of the funds misappropriated by . . . [Ms. Cervantes] and that the [IAM] International President and Grand Lodge bring suit against . . . [Ms. Cervantes] to recover such monies."[5]  (ECF Nos. 1-2; 1-3).  IAM responded in a June 2, 2022 letter advising Plaintiff that IAM hired Withum to conduct an investigation regarding Plaintiff's concerns.  (ECF No. 17-8, at 9).

IAM secured an accounting and Withum concluded "that there was no evidence of wrongdoing, misappropriation or abuse in the expenses submitted[.]"  (ECF No. 17-9, at 3).  The IAM Executive Council reviewed the Withum report and Plaintiff's demand and notified Plaintiff that there was "no basis for taking any further

---

[4] Plaintiff sent another letter to President Martinez and the IAM Executive Council on July 28, 2022, outlining the same issues presented in her May 5, 2022, letter.

[5] In her May 5, 2022, letter, Plaintiff also demanded that IAM provide an accounting for and bring suit against President Martinez (ECF No. 1-2). Plaintiff only seeks permission of this court under section 501(b) to bring suit against Ms. Cervantes. (ECF No. 1, at 2).

9

action." (ECF No. 17-9, at 3). This is not a refusal or failure to act. *See Gould*, 1 F.4th at 589-90 (finding a union who met plaintiff's demand, secured an accounting, and concluded that no legal action was appropriate did not fail or refuse to act under section 501(b)). A different result is found in *Brink v. DaLesio*, 453 F.Supp. 272, 277 (D.Md. 1978), where the union executive board failed to respond to plaintiff's demand for over two months.

While Plaintiff disagrees with the accounting conducted by Withum, she has not shown that IAM failed or refused to act on her May 5, 2022 demand.[6] IAM secured an accounting showing that no other relief was necessary. Because Plaintiff has not met one of the conditions precedent to filing under 501(b), she may not bring suit pursuant to 501(b), and her request for leave will be denied.

**B. Good Cause Requirement**

The parties have spent a great deal of time briefing the requirements of good cause. And, as noted in footnote 3, the circuits are somewhat at odds over the proper standard. Because Plaintiff has not shown that IAM ignored or failed to act on her demand, the court need not decide the issue of good cause.

---

[6] The parties spar about whether Plaintiff needed to make a "second" demand, but that formulation is misplaced. The record is clear that the Union did not ignore her first request and she cannot sue based on it. If she was dissatisfied, she could presumably make another request and see whether it was ignored or not. She made no such further request so this court can only evaluate whether the Union's response to her first request was sufficient. It was.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's application for leave to file her verified complaint under 29 U.S.C. § 501(b) will be denied.  A separate order will follow.

<pre>
                                    /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge
</pre>